IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

**INSURASOURCE, INC.**                                                       **PLAINTIFF**

**v.**                                       **CIVIL ACTION NO. 2:11-CV-82-KS-MTP**

**FIREMAN'S FUND INSURANCE**
**COMPANY**                                                     **DEFENDANT**

### MEMORANDUM OPINION AND ORDER

For the reasons stated below, the Court **denies** Defendant's Motion for Summary Judgment [26].

### I. BACKGROUND

Plaintiff is a Mississippi corporation which finances insurance premiums. Under the typical terms of Plaintiff's finance agreements, policyholders are required to make regular monthly payments to Plaintiff, and they grant Plaintiff a security interest in any unearned premiums that may be refunded upon cancellation of the policy. They also grant Plaintiff power of attorney with respect to cancellation of the policy. Therefore, if a policyholder defaults on its obligations to Plaintiff, Plaintiff can cancel the policy at issue and collect the unearned premiums. Plaintiff typically provides the insurance carrier with notice of the finance agreement, the power of attorney, and the purported security interest in any unearned premiums.

Defendant issued two insurance policies (Policy Nos. MXI97123755 and MXI197123756) to College Point Asphalt from May 9, 2005 through May 9, 2010. The policies were renewed annually up to May 9, 2010. A retail insurance broker, John A.

Rocco, Inc. ("Rocco"), obtained the policies through a wholesale insurance broker, D.J. Colby Co. ("D.J. Colby"). On March 19, 2010, Rocco entered into a Premium Finance Agreement with Plaintiff, purportedly on behalf of College Point Asphalt for the renewal of the same insurance policies. Plaintiff paid Rocco $54,622.08 to fund the balance due on the renewal policies with Defendant. However, there were never actually any renewals, and Rocco absconded with the money.[1]

Plaintiff subsequently filed the present action, seeking the payment of the unearned premiums assigned to it pursuant to the Premium Finance Agreement in the amount of $57,122.51, plus interests, costs, and fees.

## II. DISCUSSION

### A. *Standard of Review*

Rule 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010). "Where the burden of production at trial ultimately rests on the nonmovant, the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case." *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir.

---

[1] This was not the extent of Rocco's malfeasances. Plaintiff has initiated several actions against insurers for the return of unearned premiums on policies purportedly placed by Rocco. *See, e.g. Insurasource, Inc. v. Cowles & Connell of NY, Inc.*, No. 2:11-CV-76-KS-MTP, 2011 U.S. Dist. LEXIS 107228 (S.D. Miss. Sept. 21, 2011).

2010) (punctuation omitted). The nonmovant "must come forward with specific facts showing that there is a genuine issue for trial." *Id.* (punctuation omitted). "An issue is material if its resolution could affect the outcome of the action." *Sierra Club, Inc.*, 627 F.3d at 138. "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Cuadra*, 626 F.3d at 812.

The Court is not permitted to make credibility determinations or weigh the evidence. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009). When deciding whether a genuine fact issue exists, "the court must view the facts and the inference to be drawn therefrom in the light most favorable to the nonmoving party." *Sierra Club, Inc.*, 627 F.3d at 138. However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002).

### B.  *Agency*

The parties agree that the key issue in this case is whether John Rocco was Defendant's agent. Defendant argues that it never received any payment from Rocco on the policies at issue, that it never issued the policies for the time period in question, and that there is no evidence of an actual or apparent agency relationship between it and Rocco. In response, Plaintiff argues that Rocco was Defendant's agent by operation of a New Jersey statute, and that Defendant is estopped from denying that Rocco was its agent. The Court will first determine whether Rocco was Defendant's agent by operation of law.

1.   *Agency by New Jersey Statute*

In its Order [42] of February 1, 2012, the Court acknowledged Plaintiff's argument that New Jersey law should be applied to determine whether an agency relationship existed between Defendant and Rocco, and it specifically ordered the parties to provide briefing on the choice of law issues presented by this case. In its supplemental brief [43], Plaintiff continued to argue that Rocco was Defendant's agent by operation of New Jersey law, but Plaintiff failed to provide any argument or authority as to why the Court should apply New Jersey law. Plaintiff's failure to comply with the Court's order is of little consequence, though, as the New Jersey statute at issue does not create an agency relationship in this case.

Plaintiff argues that Rocco was Defendant's agent by operation of New Jersey Statute § 17:22-6.2a, which provides:

> Any insurer which delivers in this State to any insurance broker a contract of insurance . . . pursuant to the application or request of such broker, acting for an insured other than himself, shall be deemed to have authorized such broker to receive on its behalf payment of any premium which is due on such contract at the time of its issuance or delivery or payment of any installment of such premium or any additional premium which becomes due or payable thereafter on such contract, provided such payment is received by such broker within 90 days after the due date of such premium or installment thereof or after the date of delivery of statement by the insurer of such additional premium.

N.J. STAT. ANN. § 17:22-6.2a (West 2012). This statute "was enacted to protect the insurance buying public from the misappropriation, conversion, or other misconduct of an insurance broker in those instances where an insurer uses the broker to effect the delivery of the policy of insurance and to collect the premiums due for it." *Kubeck v.*

4

*Concord Ins. Co.*, 248 A.2d 131, 135 (N.J. Super. Ct. Ch. Div. 1968). It "clearly creates a principal-agent relationship between the insurer and the broker in those instances where the insurer uses the broker to deliver a policy of insurance and collect and remit premiums due thereon." *Id.*

Before such an agency relationship can exist, though, there has to actually be a contract of insurance. *Millner v. N. J. Ins. Underwriting Ass'n*, 475 A.2d 653, 655 (1984). The statute clearly provides that the insurer must deliver a "contract of insurance" to the broker to authorize the broker to receive payments on its behalf. *Id.*; N.J. STAT. ANN. § 17:22-6.2a (West 2012). "The pivotal inquiry is not so much whether a 'policy' was physically delivered, but whether an actual contract of insurance existed." *Millner*, 475 A.2d at 655.

In the present case, Defendant presented undisputed evidence that it never issued policies to College Point Asphalt for the coverage period of April 9, 2010, through April 9, 2011 – the coverage period noted on Plaintiff's premium finance agreement. Plaintiff conceded as much in briefing, arguing that it is irrelevant whether Defendant renewed the policies in 2010 because it had issued the policies for prior years. However, New Jersey courts have held that Section 17:22-6.2a does not create an agency relationship between the broker and the insurer if there is no valid contract of insurance in place. *Id.* Consequently, if an insured fails to renew a policy, then there is no contract of insurance and the broker is not the insurer's agent for the receipt of premiums for the renewed policy. *See Id.* at 654-55 (where insured failed to renew policy by timely submitting application, the insurer never issued a policy and,

therefore, the broker was not the insurer's agent for the receipt of premiums); *Commercial Union Assurance Cos. v. State Farm Mut. Auto. Ins. Co.*, 385 A.2d 1286, 1289-90 (N.J. Super. Ct. Law Div. 1978) (where policy had expired for failure to renew, the insurer had not delivered a contract of insurance and, therefore, the broker was not the insurer's agent for the receipt of premiums). Therefore, as the insured did not renew the policies for the time period at issue, Section 17:22-6.2a did not create an agency relationship between Defendant and Rocco with respect to the payment of the purported premium.[2]

### 2.  *Apparent Authority*

It appears to be undisputed that there was no actual agency relationship

---

[2] Plaintiff also argues that Rocco was Defendant's agent by operation of New Jersey Statute § 17:22A-2f. However, that statute was repealed in 2001. *See* N.J. STAT. ANN. § 22A-2 (West 2012). Another New Jersey statute – part of the "Fair Automobile Insurance Reform Act" – defines an "insurance agent" as an "insurance agent" and "insurance broker" as defined in Section 17:22A-2f – the repealed statute. N.J. STAT. ANN. § 17:33B-13 (West 2012). Plaintiff did not address Section 17:33B-13, but the Court finds it unhelpful, as it defines "insurance agent" by reference to a definition that was repealed.

Furthermore, New Jersey Statute § 17:16D-14 – also cited by Plaintiff – assumes the existence of an insurance contract. *See* N.J. STAT. ANN. § 17:16D-14(a) (West 2012) ("Whenever a financed insurance contract is canceled . . . "). Likewise, New Jersey Statute § 17:29C-4.1 assumes that a contract existed in the first place. N.J. STAT. ANN. § 17:29C-4.1 (West 2012) ("Whenever an insurance policy or contract is canceled . . ."). As the Court explained, there was no insurance contract in place for the relevant policy period.

Finally, Plaintiff cites *Spilka v. S. Am. Managers, Inc.*, 255 A.2d 755 (N.J. 1969). *Spilka* is distinguishable from the present matter insofar as there were actually policies issued in that case. *Id.* at 757-58. The *Spilka* court's admonition that "upon cancellation of an insurance contract by either party to it, the obligation rests on the insurer to pay to the insured the unearned premium" has little application in the present case, as there was never a contract to cancel. *Id.* at 761.

between Rocco and Defendant. Plaintiff has not presented any evidence that Defendant gave Rocco explicit, actual authority to enter into premium finance transactions, collect premiums, or act on its behalf in any manner. Accordingly, the pertinent question is whether Rocco had apparent authority to engage in the transaction at issue in this case.

As noted above, Plaintiff argues that New Jersey law should apply, while Defendant argues that Mississippi law should apply. The Court is not required to conduct a choice-of-law analysis, though. Both Mississippi and New Jersey law dictate the same conclusion: that no apparent agency relationship existed between Rocco and Defendant. *Covington v. Aban Offshore Ltd.*, 650 F.3d 556, 559 (5th Cir. 2011) (no need for a choice of law analysis if the same result would be reached under either state's law).

In Mississippi, the "burden of proving an agency relationship is upon the party asserting it." *Booker v. Pettey*, 770 So. 2d 39, 45 (Miss. 2000). "Apparent authority exists when a reasonably prudent person, having knowledge of the nature and usages of the business involved, would be justified in supposing, based on the character of the duties entrusted to the agent, that the agent has the power he is assumed to have." *Mladineo v. Schmidt*, 52 So. 3d 1154, 1167 (Miss. 2010). "To recover under the theory of apparent authority, the following three factors must be present: (1) acts or conduct on the part of the principal indicating the agent's authority, (2) reasonable reliance on those acts, and (3) a detrimental change in position as a result of such reliance." *Id.*

Similarly, under New Jersey law, "[a]pparent authority arises when a third

party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations." *N.J. Lawyers' Fund for Client Protection v. Stewart Title Guar. Agency, Inc.*, 1 A.3d 632, 639 (N.J. 2010) (punctuation omitted). Apparent authority "focuses on the reasonable expectations of third parties with whom an agent deals. Therefore, a court must examine the totality of the circumstances to determine whether an agency relationship existed even though the principal did not have direct control over the agent." *Id.* (punctuation and citation omitted).

Plaintiff made several arguments as to why it was justified in its belief that Rocco was authorized by Defendant to execute the premium finance agreement and collect the premiums at issue in this case. First, Plaintiff argues that the New Jersey statutes discussed above justified its belief that Rocco was Defendant's agent. As the Court already noted, New Jersey Statute § 17:22-6.2a did not create an agency relationship between Defendant and Rocco with respect to the payment of the purported premium because the insured did not renew the contracts of insurance for the time period at issue. *See Millner*, 475 A.2d at 654-55; *Commercial Union Assurance Cos.*, 385 A.2d at 1289-90. Therefore, Plaintiff's belief that the statute created an agency relationship was not reasonable.

Plaintiff also argues that Defendant's failure to respond to its "Notices of Financed Premium," "Notices of Intent to Cancel Insurance," and "Notices of Cancellation" justified its belief that Rocco was Defendant's agent. However, Plaintiff sent these documents to Defendant after the premium finance agreement had already

8

been executed. Accordingly, Plaintiff could not have reasonably relied upon Defendant's failure to respond to them before executing the agreement and remitting funds to Rocco.

Next, Plaintiff argues that it was justified in its belief that Rocco was authorized to receive premiums on behalf of Defendant because Defendant had issued policies for College Point Asphalt for several years prior to the events in question. Plaintiff also notes that Rocco had placed insurance policies with Defendant – through Defendant's general agent – as far back as 2005 and as late as 2009. However, Plaintiff failed to present any evidence that it possessed any of this information at the time it executed the premium finance agreement. Accordingly, it could not have relied on these facts in entering the transaction.

Indeed, Plaintiff's 30(b)(6) representative, Jon Runnels, admitted that Plaintiff had not – at the time it executed the premium finance agreement – received any information, documentation, or representation from Defendant or its general agent holding out Rocco as Defendant's agent. He also could not point to any actions or conduct by Defendant which led Plaintiff to believe that Rocco was its agent, and he admitted that he had no knowledge as to whether Rocco had ever directly communicated with Defendant about the two policies at issue in this case. In short, Plaintiff has not presented any evidence that it relied upon any conduct, representations, manifestations, or documentation from Defendant before it entered into the premium finance agreement.

Finally, Plaintiff contends that Rocco's representations – in the premium finance

9

agreement and in communications prior to its execution – justified its belief that he had authority to act on Defendant's behalf. However, both Mississippi and New Jersey law require some action or manifestation by the principal to create apparent authority. *See Mladineo*, 52 So. 3d at 1167; *Stewart Title Guar. Agency, Inc.*, 1 A.3d at 639.

In summary, Plaintiff has not identified any actions, representations, statements, or conduct by Defendant of which it was aware prior to entering the premium finance agreement that would justify its belief that Rocco acted on Defendant's behalf with respect to the College Point Asphalt premium finance agreement. Therefore, Plaintiff is unable to meet the "reasonable reliance" element under Mississippi law, *Mladineo*, 52 So. 3d at 1167, or the reasonable belief element under New Jersey law, *Stewart Title Guar. Agency, Inc.*, 1 A.3d at 639, required for a finding of apparent agency. As such, Plaintiff has not presented sufficient evidence to make out an apparent agency relationship between Defendant and Rocco.

### C. *Estoppel/Ratification*

Plaintiff also argues that Defendant is estopped from denying that Rocco was its agent in connection with the College Point Asphalt premium finance agreement because it remained silent after receiving notice of the premium finance agreements. Another way to phrase this argument is that Defendant ratified Rocco's actions by its silence or inactivity. *See* RESTATEMENT (THIRD) OF AGENCY §§ 4.01, 4.02 (2006). As with the agency issue, Plaintiff argues that the Court should apply New Jersey law, while Defendant argues that Mississippi law should apply. There is no need to conduct a

choice-of-law analysis, though,[3] as both Mississippi law and New Jersey law lead to the same result.

*1. Mississippi Law Regarding Ratification*

Mississippi defines ratification as "the affirmance by a person of a prior act which did not bind him but which was done or professedly done on his account, whereby the act, as to some or all persons is given effect as if originally authorized by him." *Barnes, Broom, Dallas & McLeod, PLLC v. Estate of Cappaert*, 991 So. 2d 1209, 1212 (Miss. 2008).

> Ratification does not arise by operation of law; rather, a person ratifies an act by (a) manifesting assent that the act shall affect that person's legal relations, or (b) conduct that justifies a reasonable assumption that the person so consents. It is true that, under some circumstances, a principal's inaction can result in ratification, but only where the principal has notice that others will infer from his silence that he intends to manifest his assent to the act.

*Kinwood Capital Group, LLC v. BankPlus*, 60 So. 3d 792, 797 (Miss. 2011); *see also Estate of Cappaert*, 991 So. 2d at 1212 (ratification may be established through inaction).

"[I]n order that there be a ratification there must be a voluntary assumption of the unauthorized act either on full information or on less than full information if undertaken deliberately in disregard of the fact that all knowledge of the transaction available has not been obtained." *Green Acres Farms v. Brantley*, 651 So. 2d 525, 528-29 (Miss. 1995). Unless the purported principal deliberately disregards his own

---

[3]*Covington*, 650 F.3d at 559.

11

ignorance of relevant facts, his lack of knowledge renders any alleged ratification invalid. *Id.* at 530. As the Mississippi Supreme Court has stated:

> The principal, before a ratification becomes effectual against him, must be shown to have had previous knowledge of all the facts and circumstances in the case, and if he assented to or confirmed the act of his agent while in ignorance of all the circumstances, he can afterwards, when informed thereof, disaffirm it. And the principal's want of such knowledge, even if it arises from his own carelessness in inquiring or neglect in ascertaining facts, or from other causes, will render such ratification invalid. His knowledge is an essential element.

*Id.*

Sharon Primerano, Defendant's 30(b)(6) representative, described Defendant's working relationship with insurance brokers. She stated that Defendant worked directly with D.J. Colby, the wholesale insurance broker who, in turn, worked directly with Rocco, the retail insurance broker. Rocco was the retail broker on the College Point Asphalt account from 2005 up until 2010. Although Primerano denied that Defendant had an agency relationship with Rocco during that period of time, she admitted that Defendant knew Rocco was placing its policies.

In fact, Rocco was listed as the agent on College Point Asphalt's insurance applications, notices of cancellation, and policy change requests from 2005 through 2009. Rocco submitted these documents to D.J. Colby, who then submitted them to Defendant. In some cases, employees of D.J. Colby sent e-mails to Defendant's employees and copied Rocco's employees in on the e-mails. Therefore, it is clear that Defendant had notice that it was writing policies placed by Rocco for at least five years prior to the time period at issue in this case.

Finally, Plaintiff presented evidence that it mailed notices of the financed premiums to Defendant on March 19, 2010. Plaintiff does not have any evidence that Defendant received the notices, and Defendant's 30(b)(6) representative denied that Defendant ever received them. However, she admitted that the address on the notices was the correct one.[4] Defendant had no official policy regarding the receipt of such notices, but its underwriters typically reviewed the notices to ensure that the policy numbers, effective dates, and premium amounts were correct. If there was a discrepancy between Defendant's records and a notice from a premium financing company, Defendant's underwriters sent a letter back to the premium financing company to advise of the discrepancy.

To summarize the pertinent Mississippi law: if Defendant remained silent despite having full knowledge of Rocco's actions, then Defendant ratified Rocco's actions by its inactivity. Furthermore, if Defendant remained silent but did not have full knowledge of Rocco's actions due to its own deliberate disregard of the facts, then it ratified Rocco's actions. In the present case, Plaintiff presented sufficient evidence to create a genuine dispute of material fact as to whether Defendant knew that Rocco had executed the College Point Asphalt Premium Finance Agreement, or would have known but for its own deliberate ignorance of Rocco's actions. Plaintiff presented evidence that Defendant had worked with Rocco for several years, albeit through an intermediary general agent. Furthermore, Plaintiff presented evidence that it mailed

---

[4]She testified that the city's name was spelled incorrectly – "Nocato, CA," rather than "Novato, CA." However, she confirmed that the zip code was correct.

13

notices of the premium finance agreements to Defendant at its correct address. A jury could permissibly find, based on this evidence, that Defendant either knew of Rocco's actions or deliberately remained ignorant of them. Accordingly, if the Court were to apply Mississippi law – as Defendant argues it should – it would be required to deny Defendant's Motion for Summary Judgment.

*2.     New Jersey Law Regarding Ratification*

New Jersey's law regarding a principal's ratification of unauthorized actions by an agent is substantially similar to Mississippi's. "Ratification is the affirmance by a person of a prior act which did not bind him but which was done, or professedly done on his account, whereby the act, as to some or all persons, is given effect as if originally authorized by him." *Thermo Contractor Corp. v. Bank of N.J.*, 354 A.2d 291, 296 (N.J. 1976). "Ratification requires intent to ratify plus full knowledge of all the material facts." *Id.* It "may be express or implied, and intent may be inferred from the failure to repudiate an unauthorized act, or from conduct on the part of the principal which is inconsistent with any other position than intent to adopt the act." *Id.* (internal citations omitted). Mere silence can constitute ratification. *Johnson v. Hosp. Serv. Plan*, 135 A.2d 483, 486 (N.J. 1957). "While the silence of a purported principal may not indicate his affirmance, his failure to manifest a repudiation may subject him to liability to one who, as he knows, is acting in the belief that there has been authorization or ratification." *Markowitz v. Berg*, 11 A.2d 107, 108 (N.J. 1940).

Most New Jersey cases require that a purported principal have full knowledge of all material facts before it can ratify the actions of another. *See Thermo Contractor*

14

*Corp.*, 354 A.2d at 296 (ratification requires full knowledge of all material facts); *Entrikin v. Wister*, 134 A. 659, 660 (N.J. 1926). Indeed, some New Jersey courts have held that an alleged principal must have "full knowledge of all the relevant facts and full appreciation of what was being done" to ratify the actions of a purported agent. *In re Estate of Lange*, 383 A.2d 1130, 1137 (N.J. 1978); *see also Citizens First Nat'l Bank of N.J. v. Bluh*, 656 A.2d 853, 859 (N.J. Super. Ct. App. Div. 1995). However, some New Jersey decisions include language indicating that an alleged principal can ratify the acts of another if he merely has "reason to know" or "should have known" the relevant facts. *See Bd. of Educ. v. Hoek*, 183 A.2d 633, 648 (N.J. 1962) (ratification may be implied from conduct where the purported principal "knew or should have known of the material facts"); *Markowitz*, 11 A.2d at 108 ("If a person knows or has reason to know that another has been deceived by the act of the purported agent, and is likely to act upon his erroneous belief, he must, to avoid liability, take such steps to undeceive the third person as would be taken by a reasonable person having ordinary regard for the interests of others."); *Campbell v. Mfrs. Nat'l Bank*, 51 A. 497, 500 (N.J. 1902) (a purported principal is "chargeable with the things they know, or would have known by the exercise of ordinary care").

In the present case, it does not matter whether the Court applies the "full knowledge" standard or the more liberal "reason to know" standard. Plaintiff presented sufficient evidence to create a genuine dispute of material fact under either one. As noted in the Court's analysis of Mississippi law, Plaintiff presented evidence that Defendant worked with Rocco for several years, albeit through an intermediary general

15

agent. Furthermore, Plaintiff presented evidence that it mailed notices of the financed premiums to Defendant.

Under New Jersey law, whether an alleged principal had sufficient knowledge of an agent's actions to ratify them is a matter for a jury to decide. *Meyer v. Peoples Bank of Hawthorne*, 181 A. 54, 55 (N.J. 1935). This case presents a prototypical jury question: Plaintiff claims that it mailed the notices, but Defendant denies having received them. Accordingly, if the Court were to apply New Jersey law, as Plaintiff argues it should, then it would be required to deny Defendant's Motion for Summary Judgment.

### III. CONCLUSION

For the reasons stated above, the Court **denies** Defendant's Motion for Summary Judgment [26]. Plaintiff has presented sufficient evidence to create a genuine dispute of material fact as to whether Defendant ratified Rocco's actions through its inactivity.

SO ORDERED AND ADJUDGED this 8th day of March, 2012.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE