# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# HATTIESBURG DIVISION

**INSURASOURCE, INC.**                                                                                          **PLAINTIFF**

**v.**                                                       **CIVIL ACTION NO. 2:11-CV-82-KS-MTP**

**FIREMAN'S FUND INSURANCE**
**COMPANY**                                                                                                     **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

For the reasons stated below, the Court **denies** Defendant's Motion to Reconsider [46].

### I. BACKGROUND

Plaintiff is a Mississippi corporation which finances insurance premiums. Under the typical terms of Plaintiff's finance agreements, policyholders must make regular monthly payments to Plaintiff, and they grant Plaintiff a security interest in any unearned premiums that may be refunded upon cancellation of the policy. They also grant Plaintiff power-of-attorney with respect to cancellation of the policy. Therefore, if a policyholder defaults on its obligations to Plaintiff, Plaintiff can cancel the policy and collect the unearned premiums. Plaintiff typically provides the insurance carrier with notice of the finance agreement, the power of attorney, and the purported security interest in any unearned premiums.

Defendant issued two insurance policies (Policy Nos. MXI97123755 and MXI197123756) to College Point Asphalt from May 9, 2005 through May 9, 2010. The policies were renewed annually up to May 9, 2010. A retail insurance broker, John A.

Rocco, Inc. ("Rocco"), obtained the policies through a wholesale insurance broker, D.J. Colby Co. ("D.J. Colby"). On March 19, 2010, Rocco entered into a Premium Finance Agreement with Plaintiff, purportedly on behalf of College Point Asphalt for the renewal of the same insurance policies. Plaintiff paid Rocco $54,622.08 to fund the balance due on the renewal policies with Defendant. However, there were never actually any renewals, and Rocco absconded with the money.[1]

Plaintiff subsequently filed the present action, seeking the payment of the unearned premiums assigned to it pursuant to the Premium Finance Agreement in the amount of $57,122.51, plus interests, costs, and fees. On December 20, 2011, Defendant filed its Motion for Summary Judgment [26]. The Court denied the motion on March 8, 2012, holding that Plaintiff had presented sufficient evidence to create a genuine dispute of material fact as to whether Defendant ratified Rocco's actions by its inactivity after Plaintiff sent it a notice of the Premium Finance Agreement. *Insurasource, Inc. v. Fireman's Fund Ins. Co.*, No. 2:11-CV-82-KS-MTP, 2012 U.S. Dist. LEXIS 31074, at *23 (S.D. Miss. Mar. 8, 2012). Defendant subsequently filed a Motion to Reconsider [46], which the Court now addresses.

## II. STANDARD OF REVIEW

Motions for reconsideration are either addressed under Rule 59(e) or Rule 60(b).

---

[1]This was not the extent of Rocco's malfeasances. Plaintiff has initiated several actions against insurers for the return of unearned premiums on policies purportedly placed by Rocco. *See, e.g. Insurasource, Inc. v. Cowles & Connell of NY, Inc.*, No. 2:11-CV-76-KS-MTP, 2011 U.S. Dist. LEXIS 107228 (S.D. Miss. Sept. 21, 2011).

*Shepherd v. Int'l Paper Co.*, 372 F.3d 326, 328 n. 1 (5th Cir. 2004). The timing of the motion determines which rule applies. *Id.* A motion for reconsideration filed and served within twenty-eight days of the filing of the order to be reconsidered is reviewed under Rule 59(e), while anything filed and served after that is reviewed under Rule 60(b). *See Yarrito v. United States*, No. 5:11-CV-44-DCB-JMR, 2011 U.S. Dist. LEXIS 52312, at *1 (S.D. Miss. May 16, 2011); *Gunn v. City of Cleveland*, No. 2:09-CV-114-MPM, 2011 U.S. Dist. LEXIS 83927, at *3-*4 (N.D. Miss. July 29, 2011).

Defendant filed its Motion to Reconsider [46] on March 19, 2012, eleven days after the Court entered its Memorandum Opinion and Order [45] denying Defendant's Motion for Summary Judgment [26]. Therefore, Rule 59(e) applies. Rule 59(e) "serves the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence and is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Knight v. Kellogg Brown & Root Inc.*, 333 F. App'x 1, 8 (5th Cir. 2009); *see also Templet v. Hydrochem Inc.*, 367 F.3d 473, 478-79 (5th Cir. 2004). Granting a Rule 59(e) motion is "an extraordinary remedy," and it "should be used sparingly." *In re Pequeno*, 240 F. App'x 634, 636 (5th Cir. 2007).

The Court has "considerable discretion" when considering Rule 59(e) motions. *Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 355 (5th Cir. 1993). However, its discretion is not limitless, and it should be exercised with two "important judicial imperatives" in mind: "1) the need to bring litigation to an end; and 2) the need to render just decisions on the basis of all the facts." *Templet*, 367 F.3d at 479. There are

three grounds for altering or amending a judgment under Rule 59(e): "(1) an intervening change in controlling law, (2) the availability of new evidence not previously available, or (3) the need to correct a clear error of law or prevent manifest injustice." *Williamson Pounders Architects, P.C.*, 681 F. Supp. 2d 766, 767 (N.D. Miss. 2008).

Defendant has not cited any intervening change in the controlling law or new evidence previously unavailable to it. Accordingly, the Court assumes that Defendant believes that the Court should amend its previous order to correct a clear error of law or prevent manifest injustice. Before a litigant files a Rule 59(e) motion on this basis, it "should evaluate whether what may seem to be a clear error of law is in fact simply a point of disagreement between the Court and the litigant." *Atkins v. Marathon LeTourneau Co.*, 130 F.R.D. 625, 626 (S.D. Miss. 1990).

### III. DISCUSSION

Defendant presents two arguments in its Motion to Reconsider [46]. First, Defendant argues that the doctrine of ratification does not apply because it received no benefit from Rocco's actions. Second, Defendant argues that the doctrine of ratification does not apply because it lacked capacity to approve the Premium Finance Agreement.[2]

---

[2]Defendant also alluded to a third argument, stating that Plaintiff did not raise the issue of ratification in its pleadings. The Court disagrees. Although Plaintiff did not brief the issue as thoroughly as it should have, it has consistently maintained that Defendant could not deny that Rocco was its agent because of its silence and inactivity after Plaintiff sent notice of the premium financing agreement. That is a ratification argument, despite the parties' joint failure to brief

*A.     Receipt of a Benefit*

First, Defendant argues that the doctrine of ratification is inapplicable to this case because it received no benefit from Rocco's actions. However, the receipt and/or retention of a benefit is only one way in which a principal can ratify the actions of an agent. The Restatement (Third) of Agency provides that a "person ratifies an act by (a) manifesting assent that the act shall affect the person's legal relations, or (b) conduct that justifies a reasonable assumption that the person so consents." Restatement (Third) of Agency § 4.01(2) (2006). The comments to the Restatement clarify that a failure to act can constitute ratification:

> A principal may ratify an act by failing to object to it or to repudiate it. Ratification results under subsection 2(a) from a person's manifestation of assent. Failure to object may constitute such a manifestation when the person has notice that others are likely to draw such an inference from silence. . . . Delay in expressing an objection to an unauthorized act may result in ratification, depending on the length of time that elapses between the time the principal learns of the unauthorized act and the time the principal manifests an objection. It is a question of fact in the particular circumstances whether the lapse in time is sufficient to constitute ratificaion.

Restatement (Third) of Agency § 4.01 cmt. f (2006). In summary, Defendant is correct that a principal may ratify an agent's action "by receiving or retaining benefits it generates" under certain circumstances, but it is clear that the receipt of benefits is only one way ratification can occur. *See* Restatement (Third) of Agency § 4.01 cmt. g (2006).

Both Mississippi and New Jersey courts accord with the Restatement on this

---

it as such.

issue. The Mississippi Supreme Court has held that a "a person ratifies an act by (a) *manifesting assent* that the act shall affect that person's legal relations, or (b) conduct that justifies a *reasonable assumption* that the person so consents." *Kinwood Capital Group, LLC v. BankPlus*, 60 So. 3d 792, 797 (Miss. 2011) (emphasis original); *see also Barnes, Broom, Dallas & McLeod, PLLC v. Estate of Cappaert*, 991 So. 2d 1209, 1212 (Miss. 2008) (a principal may ratify an agent's actions "through affirmative acts or inaction"); *Polles v. FDIC*, 749 F. Supp. 136, 140 (N.D. Miss. 1990) (a principal may ratify by failure to repudiate, inaction, conduct inconsistent with any other position than intent to adopt the agent's act, knowing assent, or negligence in permitting or failing to disavow).[3] Likewise, New Jersey courts have held that ratification "may be express or implied, and intent may be inferred from the failure to repudiate an unauthorized act, or from conduct on the part of the principal which is inconsistent with any other position than intent to adopt the act." *Thermo Contractor Corp. v. Bank of N.J.*, 354 A.2d 291, 296 (N.J. 1976) (internal citations omitted); *see also Johnson v. Hosp. Serv. Plan*, 135 A.2d 483, 486 (N.J. 1957) (mere silence can constitute ratification); *Markowitz v. Berg*, 11 A.2d 107, 108 (N.J. 1940) (silence or failure to

---

[3]Defendant only cited one Mississippi case in support of its "receipt of benefits" argument: *Patton v. S. States Transp., Inc.*, 932 F. Supp. 795, 801 (S.D. Miss. 1996). *Patton* does not, however, provide that a principal can only ratify the actions of an agent by receiving a benefit therefrom. The Court cited numerous reasons that it declined to apply the doctrine of ratification. *Patton*, 932 F. Supp. at 800-01. Although the Court noted that the principal did not receive a benefit from the agent's actions, it is clear that the Court was working through the various ways in which a principal can ratify an agent's actions, rather than holding that the receipt of a benefit is the *only* way ratification can occur.

repudiate can constitute ratification).[4] Therefore, for the reasons stated above, the Court rejects Defendant's "receipt of benefits" argument.

## B. *Capacity*

Defendant also argues that the doctrine of ratification is inapplicable here because it lacked capacity to approve the Premium Finance Agreement. First, the Court rejects this argument because Defendant has not cited any Mississippi or New Jersey law in support of it. Second, the Court rejects this argument because it focuses on the wrong actions. Plaintiff claims Defendant ratified Rocco's collection of premium funds. The mechanism by which Rocco did so – the Premium Finance Agreement – is less important than the end result.

Defendant cites *Patton*, 932 F. Supp. at 801, for the proposition that "a principal cannot ratify an act which it would not have authorized in the first place." However, the record evidence is clear that Defendant had been allowing Rocco to place policies and collect premiums for years prior to the events which led to this case, with little to no oversight. Defendant's assertion that it would not have authorized Rocco to collect premium funds in this case – acquired through a Premium Finance Agreement similar

---

[4]Defendant cites the unpublished decision *Gen. Am. Life Ins. Co. v. Int'l Ins. Co.*, 2000 WL 35547519 (D. N. J. Jan. 3, 2000), in support of its argument that receipt of a benefit is a prerequisite for ratification. There, the court held: "Where a principal avails himself of a benefit under a contract of which he does not have full knowledge, he may be found to have ratified it if he is aware he does not have all the pertinent facts and chooses not to investigate." *Id.* at *5. However, there is nothing in the opinion indicating that the court intended to hold that receipt of a benefit was the *only* way to ratify an agent's actions. When read in conjunction with the New Jersey law cited above, it is clear that receipt of a benefit is merely one way in which a principal may ratify the actions of an agent.

to others executed before it – rings hollow in light of its undisputed practices in the years prior to Rocco's malfeasances.

## IV. CONCLUSION

For the reasons stated above, the Court **denies** Defendant's Motion to Reconsider [46].

SO ORDERED AND ADJUDGED this 19th day of April, 2012.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE